# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

GREGORY D. MILLER, #442194,

Plaintiff,

v.   \*   CIVIL ACTION NO. PWG-17-1283

CO. II DUVAL JONES,
CO II KELLEN KRANICH,
CAPTAIN CRYSTAL HARRISON, and
WARDEN PHILLIP MORGAN,

Defendants.

\*\*\*\*\*

## MEMORANDUM OPINION

Plaintiff Gregory D. Miller is incarcerated at Roxbury Correctional Institution ("RCI") in Hagerstown, Maryland. Notice, ECF No. 8.[1] He filed this litigation against C.O.II Duval Jones, C.O.II Kellen Kranich, Captain Krystal Harrison, and Acting Warden Phillip Morgan pursuant to 42 U.S.C. § 1983 for alleged Eighth and Fourteenth Amendment violations. In his unverified Complaint, Miller alleges that while housed at Maryland Correctional Institution - Jessup ("MCI-J"), Correctional Officers Jones and Kranich used excessive force against him when he refused to submit to a strip search. Compl. 3, ECF No. 1. Miller claims that after this March 21, 2017 incident, he was falsely charged with rule violations. *Id.* at 3-4. He further claims that Captain Harrison and Acting Warden Morgan, the Correctional Officers' supervisors, knew that the Officers wrote false charges of rule violations and issued multiple "tickets" stemming from the same incident, which was impermissible, yet did nothing to remedy the situation. *Id.* at 3–5. Miller states "Lt. Jackson and Capt. Ross" denied him an opportunity to pursuant criminal

---

[1] This Memorandum Opinion references pagination assigned by the Court's electronic docket.

charges against Defendant Jones.² *Id.* He claims he was "bribed" by Officer Whitaker and the hearing officer to accept a plea agreement admitting to adjustment charges even though he did nothing wrong.³ *Id.* at 4. He seeks money damages, an apology, and Jones's termination from employment. *Id.* at. 6.

On October 4, 2017, Miller filed a document titled "Plaintiff's Motion to Supplement." Mot. Supp. 1, ECF No. 14. Miller alleges that Defendant Morgan attempted to cover up the March 21, 2017 incident by dismissing Miller's Administrative Remedy Procedure ("ARP") complaint on procedural grounds. *Id.* Miller also claims that, in retaliation for this lawsuit, he was identified as a security threat and transferred to a prison further away from his family. *Id.* at 3. Miller claims Department of Public Safety and Correctional Services ("DPSCS") policy was violated when Harrison and Jones were permitted to submit an additional notice of rule violation concerning the incident, and asks for additional compensatory damages based on mental and psychological injury. *Id.* These allegations will be considered in the context of this Memorandum Opinion.⁴

---

² Jackson and Ross are not named parties to this lawsuit, and Miller provides no details as to how these individuals impeded his ability to contact a local prosecutor. As an alleged crime victim, Miller has no constitutional right to insist on criminal prosecution. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Sattler v. Johnson*, 857 F.2d 224 (4th Cir. 1988). As it is neither cognizable nor factually developed, this allegation will not be addressed further.

³ These officers, also, are not named as Defendant.

⁴ Miller also alleges that, three months after the March 21, 2017 incident, he was assaulted by MCI-J Officer Ugochukawu. Supp. 1. Although Miller believes the attack by Ugochukawu was retaliatory, he provides no facts by which such an inference may be drawn. To the extent that he seeks damages from Ugochukawu, Miller may file a separate lawsuit.

Pending is Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.[5] Defs.' Mot., ECF No. 15. On October 18, 2017, in conformity with *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), the Clerk of the Court informed Miller that these Defendants filed a dispositive motion; that he had seventeen days in which to file a written opposition to the motion; and that if he failed to respond, summary judgment could be entered against him without further notice. ECF No. 18. Miller has responded. ECF No. 20.

Although he has presented his allegations in a cogent manner and filed a responsive, written opposition to Defendants' dispositive motion, Miller has requested appointment of counsel to assist him with this case. Pl.'s Mot. for Appt. of Counsel 1–2, ECF No. 19. As his pleadings and opposition demonstrate, Miller is a capable, self-represented litigant. His request for appointment of counsel is denied, in accordance with *Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987) and *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989). Further, a hearing is unnecessary to resolve the issues presented in this case. *See* Loc. R. 105.6 (D. Md. 2016). Similarly, Miller's assertion within his unverified opposition that "there is a genuine dispute of the facts, warranting discovery and denial of summary judgement [sic] at this time," Pl.'s Opp'n 7, is not sufficient to defeat review of the dispositive motion. *See* Fed. R. Civ. P. 56(d) ("If a

---

[5] Because Defendants filed a motion titled "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment," Plaintiff was on notice that the Court could treat the motion as one for summary judgment and rule on that basis. *See Laughlin v. Metro. Wash. Airports Auth.,* 149 F.3d 253, 260–61 (4th Cir. 1988); *Ridgell v. Astrue,* No. DKC–10–3280, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012). Indeed, this requirement "can be satisfied when a party is 'aware that material outside the pleadings is before the court.'" *Walker v. Univ.of Md. Med. Sys. Corp.,* No. CCB–12–3151, 2013 WL 2370442, at *3 (D. Md. May 30, 2013) (quoting *Gay v. Wall,* 761 F.2d 175, 177 (4th Cir. 1985)). Notably, Miller responded to Defendants' motion as both one to dismiss and one for summary judgment, *See* Pl.'s Opp'n 1, 7, demonstrating his awareness that the motion could be treated as one for summary judgment. Accordingly, Plaintiff had sufficient notice and the Court may treat Defendants' motion as one for summary judgment. *See Laughlin,* 149 F.3d at 260–61; *Walker,* 2013 WL 2370442, at *3; *Ridgell,* 2012 WL 707008, at *7.

nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."). Defendants' motion, construed as a motion for summary judgment, will be granted, for reasons noted herein.

## Standard of Review

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see also Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

A "genuine" dispute of material fact is one where the conflicting evidence creates "fair doubt"; wholly speculative assertions do not create "fair doubt." *Cox v. Cty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001); *see also Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999). The substantive law governing the case determines what is material. *See*

4

*Hooven–Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A fact that is not of consequence to the case, or is not relevant in light of the governing law, is not material. *Id.*; *see also* Fed. R. Evid. 401 (defining relevance). "In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party." *Downing v. Balt. City Bd. of Sch. Comm'rs*, Civil Action No. RDB 12-1047, 2015 WL 1186430, at *1 (D. Md. Mar. 13, 2015) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

There is no genuine dispute of material fact if the nonmoving party fails to make a sufficient showing on an essential element of his case as to which he would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Therefore, on those issues for which the nonmoving party has the burden of proof, it is his responsibility to confront the summary judgment motion with an affidavit that "set[s] out facts that would be admissible in evidence" or other similar facts that could be "presented in a form that would be admissible in evidence" showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c)(2), (4); *see also Ridgell,* 2012 WL 707008, at *7; *Laughlin,* 149 F.2d at 260–61.

Defendants have attached to their motion Declarations and verified medical and correctional records. ECF Nos. 15-3 through ECF No. 15-8, ECF No. 21-1. In contrast, Miller has not filed an affidavit and his allegations are contained in an unverified Complaint. Miller does, however, cite to three pages of the records Defendants produced, and I have considered that evidence. *See* Pl.'s Opp'n 5–6 (citing DPSCS Recs. 34, 73, 82, ECF No. 15-3). But, because the Complaint is not verified, its factual assertions may not be considered in opposition to Defendants' motion. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); Fed. R. Civ. P. 56(c)(1)(A); *see also Abdelnaby v. Durham D & M, LLC*, No. GLR-14-3905, 2017 WL 3725500, at *4 (D. Md. Aug. 29, 2017) (awarding summary judgment for the defendants,

5

because the plaintiff could not "create a genuine dispute of material fact 'through mere speculation,'" and "[t]hus, the Court [wa]s left with a record that [wa]s bereft of evidence supporting any of Abdelnaby's arguments") (quoting *Beale v. Hardy*, 769, F.2d 213, 214 (4th Cir. 1985)).

## Background

Defendants provide the following factual background, which is supported by the exhibits they attached to their motion:

> Miller was housed in Maryland Correctional Institution in Jessup, Maryland (hereinafter "MCI-J") at the time of the incident. On March 21, at approximately 7:30 p.m., Defendants, Correctional Officers Duval Jones and Kellen Kranich, were conducting a "random security round" in Housing unit G, where Gregory Miller was housed. Exhibit 1, Declaration of Nichole Daugherty, at p. 45. The officers ordered Miller to submit to a random strip search and was escorted out of his cell to a sanitation closet in order to conduct the search. *Id.*, at p. 79. He was ordered to turn over his clothing items during the search, and Miller refused to comply. *Id.* According to MCI-J's Serious Incident Report, Miller reached into his long johns pants groin area and attempted to pull an item out of his pants. *Id.* The officers gave Miller an order to stop, which Miller refused to comply. *Id.* Kranich and Jones held his arms while trying to gain compliance, and Miller pushed both officers into the closet wall and ended up on the floor. *Id.*
>
> Once on the floor, Jones and Kranich applied handcuffs and asked for leg irons to be brought from Hotel. *Id.* C.O.II Jones sustained a cut on his left hand from bumping into a nearby table during the struggle in the closet. *Id.* Miller suffered a cut above his right eye. *Id.* He was taken to the medical unit and both Officer Jones and Miller had their injuries photographed and treated by medical staff. *Id.*, at 80. Miller had the cut above his eye cleaned and treated. Exhibit 2, Wexford Records Declaration, at p. 2. C.O.II Jones received five stitches for the cut sustained on his hand. Exhibit 1, Nichole Daugherty Records Declaration, at p. 67. After receiving treatment and being photographed, Miller was taken to H Housing Unit without further incident. *Id.*, at p. 80.
>
> Major Edward Burl, in his investigation of the incident, concluded that staff acted in accordance with policy enumerated within the Department of Public Safety and Correctional Services's Use of Force Manual, and further concluded that training or disciplinary action was not applicable. *Id.*, at p. 79. Officers Jones and Kranich each issued Miller a Notice of Inmate Rule Violation on March 30 for Resisting a Lawful Order and for Possession of drug paraphernalia. *Id.*, at p. 13, 26. The Officers, when writing up an inmate for a Rule Violation, make the allegations against the inmate under penalty of perjury. *Id.* Immediately after the incident, part of a syringe was found by Correctional Officer Kranich under the

6

locker and it was documented and entered as evidence against the plaintiff. *Id.*, at p. 85; Exhibit 3, at p. 9. Miller was charged with assault of an officer, resisting a lawful order from a correctional officer, and possession of contraband in violation of prison rules. Exhibit 1, at pgs. 56, 59. The Facility Representative later dropped the assault charge. *Id.*, at p. 22.

On May 5, at the Disciplinary Hearing, Miller pled guilty to the charges that he possessed contraband and he refused to obey a lawful order by a Correctional officer. *Id.*, at p. 22. The hearing officer found that Miller was guilty of the offenses charged and as agreed upon, Plaintiff lost 90 days Good Time Credit and was placed in disciplinary segregation for 90 days. *Id.* Miller's relief for the conviction was an Administrative appeal with the Warden to be filed within 30 days. *Id.*, at p. 11. Upon resolution of that appeal, he would be able to appeal to the Warden, and then file a complaint with the IGO. Md. ADC. 12.02.27.33.

On May 24, the Commissioner had received a letter from Representative Elijah Cumming's Office regarding a complaint lodged by Miller. Exhibit 3, Record Declaration of Britt Brengle, at p. 5. On June 6, Detective Anne Nicodemus initiated an investigation of the incident. *Id.* Nicodemus interviewed Miller on June 7 and he told Detective Nicodemus that he was "found with the plunger part of a syringe and was upset with how officers conducted a strip search on him," that the officers "overreacted" and Miller was upset that "he was charged with possessing a syringe when he didn't possess a syringe." *Id.*, at p. 9. He denied that he ran into the closet to hide the plunger and denied responsibility for Officer Jones' injury to his hand. *Id.* Detective Nicodemus, after conducting her investigation, recommended that the investigation be closed. *Id.*, at p. 10.

Officers Jones and Kranich have both declared, under oath, that "at no time did I or any other correctional officer in my presence assault, harass, retaliate against, or threaten inmate Gregory D. Miller, #442-194. . . . and at no time did [they] interfere with, or delay medical treatment for inmate Miller." Exhibit 6, Declaration of Duval Jones, under oath, at para. 5-6; Exhibit 7, Declaration of Kellen Kranich, under oath, at para. 5-6. The Warden and Captain Krystal Harrison have both declared, under oath, that they have never "allowed Officers Duval Jones or Kellen Kranich to collaborate or retaliate against inmates for filing ARPS relating to Use of Force Incidents" or "allowed Correctional Officers under [their] direction to violate DPSCS training or procedure." Exhibit 5, Declaration of Warden Phillip Morgan, under oath, at para. 3, 4.

Defs.' Mem. 2–4.

Miller offers evidence that he was accused of dropping a syringe yet the parts of the syringe recovered were only small, plastic or rubber parts, and that he alleged in an ARP request that CO Jones choked him. Pl.'s Opp'n 5–6 (citing DPSCS Recs. 34, 73, 82). He does not offer

7

any other evidence to contradict Defendants' account, admitting that he "refused to comply with their orders to submit to a strip search" on March 21, 2017, but insisting that the search was "nothing other than harassment" because "Jones had him strip-searched Plaintiff three (3) times in a short period of time. Pl's Opp'n 3. He views the repeated searches "without explanation" as violations of his Fourth Amendment rights. *Id.* And, according to Miller's unverified argument in opposition, he was not trying to hide contraband, but rather simply placing his hand in his pants, as "[y]oung people regularly place their hands into their 'dip' area, which does not constitute any form of wrongdoing." *Id.* at 5. He asserts that he "was not found guilty of having assaulted the officers as claimed." *Id.* at 3. Indeed, when he agreed to plead guilty, that charge was dropped. DPSCS Recs. 9. Additionally, he insists that the "broken syringe . . . "was found in . . . a 'common area,'" with "no intrinsic or extrinsic evidence to link the broken syringe to Plaintiff." Pl.'s Opp'n 5.

**Analysis**

Use of Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was

necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*. at 38.

Miller provides no verified statement or record evidence to contradict Defendants' version of the incident. Verified record evidence demonstrates that the amount of force used was minimal and that it was used to gain compliance during a search for contraband, which was found. Miller pleaded guilty to four of the five infractions with which he was charged as a result of the incident. Miller's injuries were minor and he received prompt medical assessment and treatment. An Eighth Amendment violation for excessive use of force is not apparent on this record, and Defendants are entitled to summary judgment as to this claim.

## Due Process Violations Regarding Disciplinary Proceedings

As a prisoner, Miller has a constitutional right to a fair and impartial disciplinary hearing. To that end, revocation of his good conduct credits cannot occur without first providing Miller with the protections of procedural due process. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Miller complains that the dismissal of the assault charge calls into question his adjustment conviction; however, Miller did not defend his conduct, but rather pleaded guilty to four of the five institutional charges, resulting in revocation of 90 days of good conduct credit. DPSCS Recs. 2, 6, ECF No. 15-3. Miller does not dispute that he received written notice of the charges, waived production of evidence at the hearing, entered a guilty plea, and received a written statement of the hearing officer's findings, together with written notice of how to request an appeal of those findings. *Id*. at 7-12, 20-26. As for the amended notice of infraction that Miller insists included two additional rule infractions, *see id.* at 29, I note that there were two notices, one issued March 22, 2017, and one issued March 30, 2017. *Id.* at 53, 59. The March 22, 2017 notice, signed by CO Kranich, listed four rule violation charges ("113. Possess or use

paraphernalia that may be used for the use of an intoxicant, drug, or controlled dangerous substance[;] 312. Interfere with or resist the performance of staff duties to include a search of a person, item, area, or location[;] 400. Disobey an order[;] 406. Possess or pass contraband.") and identified "113, 400" as "Recommended Charge." *Id.* at 59. The March 30, 2017 notice, signed by CO Jones, also listed four rule violation charges, three of which were the same (312, 400, 406), and one of which was new ("101. Commit assault or battery on staff."). *Id.* at 53. It identified "101" as the one "Recommended Charge." *Id.* Amending the notice did not result in a denial of due process, as Miller was provided two continuances to prepare for his hearing. *Id.* at 20. Accordingly, there is no genuine dispute of material facts regarding the disciplinary hearings, and Defendants are entitled to judgment as a matter of law.

Claims against Acting Warden Morgan and Captain Harrison

Section 1983 requires a showing of personal fault, whether based upon the defendant's own conduct or another's conduct in executing the defendant's policies or customs. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *West v. Atkins*, 815 F.2d 993, 996 (4th Cir. 1987), *rev'd on other grounds*, 487 U.S. 42 (1988) (no allegation of personal involvement relevant to the claimed deprivation); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (in order for an individual defendant to be held liable pursuant to § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights") (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md. 1971), *aff'd*, 451 F.2d 1011 (4th Cir. 1971)). Moreover, an individual cannot be held liable under § 1983 under a theory of respondeat superior, which is a legal doctrine under which, in some circumstances, an employer is responsible for the actions of employees performed within the course of their employment. *See Monell*, 436 U.S. at 690; *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir.

2004) (no respondeat superior liability under § 1983). Thus, to establish § 1983 liability, a plaintiff must show that a defendant was personally involved in the alleged deprivation of his constitutional rights, *Vinnedge*, 550 F.2d at 928–29, or establish the defendant's liability as a supervisor, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Supervisory liability may attach under 42 U.S.C. § 1983 if (1) the defendant had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive risk of a constitutional injury; (2) the defendant's response to that knowledge was so inadequate as to show deliberate inference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between defendant's inaction and the alleged constitutional injury. *Shaw*, 13 F.3d at 799.

Miller claims that Harrison "rubberstamped" and "approved the knowingly false allegations" when approving the issuance of the notice of infraction, Pl.'s Opp'n 5, and Warden Morgan "knew multiple infractions are not to be written for one incident," *id.* at 6, an apparent reference to the amended notice of infraction issued nearly two weeks after the incident. Miller provides no evidence in support of these conclusory allegations. Moreover, given that Miller has not shown that the Correctional Officers "engaged in conduct that posed a pervasive risk of constitutional injury," he cannot establish supervisor liability based on their actions. *See Shaw*, 13 F.3d at 799. Defendants Harrison and Morgan are entitled to judgment as a matter of law.

## Conclusion

Miller was not subjected to excessive force or the taking of good conduct credits without adequate due process. Defendants are entitled to summary judgment. A separate order follows.

Date: <u>July 3, 2018</u>      ____/S/_____
                                                                        Paul W. Grimm
                                                                        United States District Judge